IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EXACT SCIENCES CORPORATION,<br><br>    Plaintiff and Counterclaim Defendant,<br>v.<br><br>GENEOSCOPY, INC.,<br><br>    Defendant and Counterclaim Plaintiff. | C.A. No. 23-1319-MN<br>(consolidated)<br><br>**REDACTED PUBLIC VERSION** |

### DEFENDANT GENEOSCOPY, INC.'S SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| | |
|---|---|
| | ASHBY & GEDDES<br>Steven J. Balick (#2114)<br>Andrew C. Mayo (#5207)<br>500 Delaware Avenue, 8th Floor |
| *Of Counsel:* | P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888 |
| Donald R. Ware<br>Sarah S. Burg | sbalick@ashbygeddes.com<br>amayo@ashbygeddes.com |
| FOLEY HOAG LLP<br>155 Seaport Boulevard<br>Boston, MA 02210<br>(617) 832-1000<br>dware@foleyhoag.com<br>sburg@foleyhoag.com | *Attorneys for Defendant* |

Dated : December 4, 2024

{02072928;v1 }

**TABLE OF CONTENTS**

I.  Exact's Asserted "Objective Indicia of Nonobviousness" Do Not Overcome Substantial Questions As To The Asserted Claims' Validity..................................................................1

II. Exact Has Not Shown That Geneoscopy's § 103 Defense Lacks Substantial Merit............3

III. Geneoscopy Has Raised A Substantial Question As To Validity Under § 112. ..................5

IV. Conclusion. ........................................................................................................................5

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*,
   825 F.3d 1373 (Fed. Cir. 2016) .................................................................................................4

*In re Fulton*,
   391 F.3d 1195 (Fed. Cir. 2004) .................................................................................................4

*In re Hyon*,
   679 F.3d 1363 (Fed. Cir. 2012) .................................................................................................3

*KSR Int'l Co. v. Teleflex Inc*,
   550 U.S. 398 (2007) ............................................................................................................. 4, 5

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,
   22 F.4th 1369 (Fed. Cir. 2022) .................................................................................................5

*McNeil-PPC, Inc. v. Perrigo Co.*,
   516 F. Supp. 2d 238 (S.D.N.Y. 2007), *affirmed* 2008 U.S. App. LEXIS 807 (Fed. Cir. Apr. 14, 2008) ..............................................................................................................................2

*Pentec, Inc. v. Graphic Controls Corp*,
   776 F.2d 309 (Fed. Cir. 1985) ..................................................................................................2

*Wyers v. Master Lock Co.*,
   616 F.3d 1231 (Fed. Cir. 2010) ................................................................................................3

**Rules**

MPEP § 1490 ...................................................................................................................................3

**Statutes**

35 U.S.C. § 103 ...............................................................................................................................3

35 U.S.C. § 112 ...............................................................................................................................5

35 U.S.C. § 253 ...............................................................................................................................3

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '781 patent | U.S. Patent No. 11,634,781 |
| '746 patent | U.S. Patent No. 11,970,746 |
| Br. | Exact's Opening Brief in Support of its Motion for a Preliminary Injunction |
| Opp. | Geneoscopy's Answering Brief in Opposition to Plaintiff's Motion for Preliminary Injunction |
| Reply | Exact's Reply Brief in Support of Its Motion for a Preliminary Injunction |
| Exact | Plaintiff Exact Sciences Corporation |
| Geneoscopy | Defendant Geneoscopy, Inc. |
| Ex. ## | Geneoscopy's Exhibit ## attached to the accompanying Declaration of Sarah S. Burg, dated December 4, 2024 |
| Inst. Dec. | PTAB's Decision Granting Institution of *Inter Partes* Review of the '781 patent (D.I. 84-1) (attached as Ex. 2 to Declaration of Sarah Burg dated September 27, 2024) |
| Whitney I. | Declaration of Duncan Whitney, Ph.D. dated September 26, 2024 |
| Whitney II | Declaration of Duncan Whitney, Ph.D. dated December 4, 2024 (Ex. 1) |
| Patterson I | Declaration of Bruce Patterson, M.D. dated July 16, 2024 |
| Patterson II | Declaration of Bruce Patterson, M.D. dated November 6, 2024 |
| Wood Dec. | Declaration of Peter Wood dated June 26, 2024 |
| Patterson Tr. | Deposition Transcript of Bruce Patterson dated November 22, 2024 (Ex. 2) |
| Eshoo Tr. | Deposition Transcript of Mark Eshoo dated November 14, 2024 (Ex. 3) |
| Lenhard | Konstanze Lenhard et al., "Analysis of Promoter Methylation in Stool: A Novel Method for the Detection of Colorectal Cancer," *Clinical Gastroenterology and Hepatology*, 3:142-149 (2005) |
| Itzkowitz | Steven Itzkowitz et al., "Improved Fecal DNA Test for Colorectal Cancer Screening," *Clinical Gastroenterology and Hepatology*, 5:111-117 (2007) |
| Shuber | International Patent Application Publication Number WO2005/113769 |
| Vilkin | Alex Vilkin et al., "Performance Characteristics and Evaluation of an Automated-Developed and Quantitative, Immunochemical Fecal Occult Blood Screening Test," *American Journal of Gastroenterology*, 100:2519-2525 (2005). |
| FDA | United States Food & Drug Administration |
| PI | Preliminary Injunction |
| POSA | Person of ordinary skill in the art |
| Priority Date | February 3, 2009 |
| PTO | United States Patent and Trademark Office |
| PTAB | United States Patent Trial and Appeal Board |
| OncoMethylome | OncoMethylome Sciences S.A. / MDxHealth S.A. |

Despite submitting over 1,000 pages of supporting declarations and exhibits (and flouting the 10-page limit in the process), Exact's Reply submissions fail to overcome the substantial questions of validity raised by Geneoscopy. Exact elected not to challenge Geneoscopy's prior art combinations in its opening brief and instead waited, improperly, to raise them for the first time in its Reply, despite knowing of the asserted prior art combinations for nearly a year. *See* Opp. 7. Even if not waived, Exact's arguments do not establish likelihood of success.

## I. Exact's Asserted "Objective Indicia of Nonobviousness" Do Not Overcome Substantial Questions As To The Asserted Claims' Validity.

In its opening brief, to demonstrate likelihood of success, Exact stood on the presumption of validity and the assertion of four "objective indicia" of nonobviousness. As to secondary considerations, however, Exact ignored the nexus requirement entirely.

As to alleged commercial success and satisfaction of long-felt need, Exact's declarant Wood admits that it was "many years" after FDA approval of Cologuard in 2014 (already five years past the asserted claims' date of invention) before Cologuard achieved success. Wood Dec. ¶12. He also admits that in the period *after* the invention date, Exact devoted $290 million to further research and development of Cologuard and spent more than $3 billion in sales and marketing to promote the product. *Id*. Exact's expert Patterson contends that Exact's massive advertising of Cologuard merely educated consumers as to its "unique characteristics," which he describes as (i) "convenient, at-home collection" and (ii) "diagnostic accuracy." Patterson II ¶178. This claim lacks any evidentiary basis, as Patterson does not cite to any actual ads, nor did he review them. Ex. 1, Whitney II ¶ 105. In any case, at-home collection of stool samples and their preservation in buffers before shipping to a lab was long known in the art. *Id.* 103. And the claims' requirement that the user divide the sample into two portions was taught by the prior art and not unique to Cologuard. *Id*. ¶¶ 78-80. As to diagnostic accuracy, neither asserted claim

requires any level of sensitivity or specificity, Inst. Dec. 18; indeed, claim 1 of the '781 patent does not even require that the sample be tested. Further, in his deposition, Patterson admitted that he knew of no evidence to show that Cologuard's combination of its DNA test with a test for blood proteins resulted in any improvement in diagnostic accuracy over Cologuard's DNA components alone. Ex. 2, Tr. 230:5-231:19. In sum, Exact has not met its burden to establish that either of these supposedly "unique characteristics" of the claimed inventions were what drove Cologuard's success.

The evidence shows, to the contrary, that Cologuard's eventual success was attributable to Exact's later investments in (i) advertising and promotion of the product;[1] and (ii) improvements to numerous other test components, themselves protected by more than 60 patents. Opp. 11. Indeed, Exact *admitted* to the PTO that Cologuard's commercial success was attributable to its later-invented DNA biomarkers and its development of novel methods for extracting DNA from stool. Opp. 11-12; Ex. 1, Whitney II ¶¶ 102, 104. Exact does not deny or even address this fatal admission. Exact cites two other alleged "indicia" of nonobviousness: industry praise and copying. But the cited awards are not directed to the claimed sample collection method; there is no nexus between the awards and the merits of the asserted claims. *Id*. ¶107. Nor has Exact met its burden of proving copying. Its expert relies exclusively on the assertion that ColoSense infringes, Ex. 2, Patterson Tr. 263:25- 264:2, yet the Federal Circuit has held that copying as a secondary consideration requires more than infringement. Specifically,

---

[1] Exact's $3 billion spent on Cologuard sales and marketing includes a 1,000-person sales force and "bespoke customer care team" to assist physicians and patients in ordering Cologuard. Wood ¶¶15-16. *See Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 315-16 (Fed. Cir. 1985) (affirming district court finding that extensive advertising negated showing of the required nexus); *McNeil-PPC, Inc. v. Perrigo Co.*, 516 F. Supp. 2d 238, 254 (S.D.N.Y. 2007), *affirmed* 2008 U.S. App. LEXIS 8017 (Fed. Cir. Apr. 14, 2008) (substantial advertising spend weakened patentee's assertion that commercial success arose from incorporation of patented invention).

Exact must prove that Geneoscopy undertook to replicate the Cologuard *product*, and the proof must include actual evidence of copying efforts. *E.g.*, *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010). Exact has offered no such evidence.

## II.    Exact Has Not Shown That Geneoscopy's § 103 Defense Lacks Substantial Merit.

Even if the Court considers Exact's belated arguments attacking the asserted prior art, they fail to overcome substantial questions of validity. Exact's Reply rehashes arguments the PTAB expressly rejected as misreading the prior art and contrary to applicable law. After scrutinizing the same prior art references that Exact disparages, the PTAB agreed that a POSA had sufficient reason to combine them to arrive at the claimed invention. [2]

As the PTAB explained, Exact's arguments misstate § 103 law by attacking the references individually rather than in combination. Inst. Dec. 15. Nor is there merit to Exact's argument that a POSA reading Lenhard would have been dissuaded from combining a DNA test with a test for blood proteins. Lenhard expressly taught that the combination "resulted in increased detection rates for CRCs," and presented data showing a 23-percentage point gain in sensitivity. Ex. 1, Whitney II ¶¶21-30. The importance of this finding is emphasized by its repetition in the paper's Introduction, Results, and Discussion. Lenhard at 143, 147.[3] *See In re Hyon*, 679 F.3d 1363, 1367 (Fed. Cir. 2012) (Board properly selected element emphasized in reference as responsible for improved properties). Under *KSR*, Lenhard's teaching provides a

---

[2] A very recent development casts further doubt on claim 1 of the '781 patent. Faced with the PTAB's pending institution decision on the '746 patent, Exact disclaimed claims 1 and 2 of that patent. Ex. 4; 35 U.S.C. § 253. Even if a disclaimer does not technically constitute an admission of invalidity, a patentee typically disclaims when it "has reason to believe" the claim is invalid. MPEP §1490 (Disclaimers) [R-01-2024]. Given the PTO's finding during prosecution that claim 1 of the '781 and claim 1 of the '746 "are not patentably distinct" from each other, Ex. 5, Exact's disclaimer further underscores the substantial questions as to the validity of claim 1 of the '781.

[3] Exact's expert Patterson admitted in his deposition that sensitivity is the most important measure of a cancer screening test's performance. Ex. 2, Patterson Tr. 104:22 - 105:10.

sufficient "reason to combine the known elements in the fashion claimed by the patent." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007); Inst. Dec. 17.

Exact argues that a POSA would have no reason to separate the sample into two and use two buffers rather than one. But Lenhard (and common sense) teaches that testing for both nucleic acids and blood proteins requires partitioning the sample in order to perform two distinct tests requiring two different procedures. In fact, the idea of dividing a fecal sample into portions and separately preserving them in different buffers for shipment to a lab was well known to POSA's by 2009. Whitney I ¶¶47-48; Ex. 1, Whitney II ¶¶78-81, 84. Notably, the patents' specification does not identify any buffer that will preserve and stabilize both nucleic acids and blood proteins in a fecal sample, and indeed, Exact's expert testified he was unaware of any such buffer that was known to exist in 2009. Ex. 2, Patterson Tr. 222::4- 225:14.

The PTAB correctly rejected Exact's argument that Lenhard "teaches away" because it also suggests adding more methylation markers, or because of the known trade-off between sensitivity and specificity. Inst. Dec. 18; *see* Ex. 1, Whitney II ¶¶25-30, 58-67. Under Federal Circuit law, if a given course of action has simultaneous advantages and disadvantages, that does not obviate a reason to combine. *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC,* 825 F.3d 1373, 1381 (Fed. Cir. 2016); Inst. Dec. 18. A disclosure of more than one alternative does not teach away, because it does not "criticize, discredit, or otherwise discourage the solution claimed." *In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004).[4]

---

[4] Exact attempts to disparage Vilkin by arguing that Vilkin's testing "required" three samples. Not so. As the paper explains, the authors tested three daily samples in their study to assess the reproducibility of the test and the effect of temperature and duration on sample stability. Multiple samples would not be required in clinical use of the Vilkin assay. Ex. 1, Whitney II ¶¶31-34, 69-70; *see* Ex. 2, Patterson Tr. 182:10-22. Exact also overlooks that a POSA is a person of ordinary creativity, not an "automaton," and can be expected to use common sense in combining known prior art elements to arrive at the claimed solution. *KSR*, 550 U.S. at 418, 420.

### III. Geneoscopy Has Raised A Substantial Question As To Validity Under § 112.

In support of its § 112 defense, Geneoscopy provided the opinion of Duncan Whitney, Ph.D., a co-inventor of the cited Shuber reference and formerly Vice President of Technology Development at Exact, where he focused on developing and optimizing methods for preserving and isolating human DNA from fecal samples. Dr. Whitney opined that the patents do not convey to a POSA as of the 2009 Priority Date that the OncoMethylome inventor was in possession of the claims Exact added in 2022 purporting to cover tests involving the extraction and detection of *any* nucleic acid from fecal samples, including RNA. Whitney I ¶¶239-241. He further opined that the specification did not enable a POSA as of 2009 to practice the full scope of claim 3 of the '746 patent because it purports to cover extraction and detection of RNA from fecal samples and blood proteins other than hemoglobin. *Id*. ¶¶263-274. In response, Exact offers only the opinion of a consultant/scientist who concedes that he is not and never has been a POSA under either party's definition, both of which require that a POSA have between 1- and 5-years' experience in processing and analyzing fecal samples. *Id.* ¶¶17-18; Patterson I ¶50.

Exact's expert, it turns out, has *none*. Ex. 3, Eshoo Tr. 34:19 - 35:16. As a matter of law, it would be an abuse of discretion to consider his opinions as to what the patents' disclosures convey to a POSA. *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1376-1378 (Fed. Cir. 2022).

Because the only evidence before the Court on Geneoscopy's § 112 defense is Dr. Whitney's invalidity opinion, at minimum Geneoscopy has raised a substantial (and unrebutted) question of validity. Moreover, as Dr. Whitney explains, Dr. Eshoo's § 112 opinions are scientifically flawed and apply an incorrect legal standard to enablement. Whitney II ¶¶111-144.

### IV. Conclusion.

Respectfully, the Court should deny Exact's PI motion.

|  |  |
|---|---|
|  | ASHBY & GEDDES |
|  |  |
|  | */s/ Andrew C. Mayo* |
|  | _____ |
| *Of Counsel:* | Steven J. Balick (#2114) |
|  | Andrew C. Mayo (#5207) |
| Donald R. Ware | 500 Delaware Avenue, 8th Floor |
| Sarah S. Burg | P.O. Box 1150 |
| FOLEY HOAG LLP | Wilmington, DE 19899 |
| 155 Seaport Boulevard | (302) 654-1888 |
| Boston, MA  02210 | sbalick@ashbygeddes.com |
| (617) 832-1000 | amayo@ashbygeddes.com |
| dware@foleyhoag.com |  |
| sburg@foleyhoag.com | *Attorneys for Defendant* |

Dated :  December 4, 2024