IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EXACT SCIENCES CORPORATION,    )
    )
    Plaintiff,    )
    )
    v.    )    C.A. No. 23-1319-MN
    )    (consolidated)
GENEOSCOPY, INC.,    )
    )
    Defendant.    )

**DEFENDANT GENEOSCOPY, INC.'S OPENING BRIEF IN SUPPORT OF ITS
<u>RENEWED MOTION TO STAY PENDING *INTER PARTES* REVIEW</u>**

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel:*

Donald R. Ware
Sarah S. Burg
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
dware@foleyhoag.com
sburg@foleyhoag.com

*Attorneys for Defendant*

Dated: February 20, 2025

{02093137;v1 }

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

    A.   Exact's Patent Claims and Geneoscopy's Response ........................................ 2

    B.   The PTAB Institutes *Inter Partes* Review of All Asserted Claims................. 4

    C.   Exact's Ancillary False Advertising Claims ................................................... 6

LEGAL STANDARD................................................................................................... 7

ARGUMENT ............................................................................................................... 8

    1.   Factor (1): A Stay Will Simplify Issues For Trial ......................................... 8

    2.   Factor (2): This Litigation Is In Its Infancy................................................. 14

    3.   Factor (3): A Stay Would Not Cause Undue Prejudice Or Confer A Tactical Advantage .................................................................................................... 15

CONCLUSION........................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*454 Life Scis. Corp. v. Ion Torrent Sys.*,
　C.A. No. 15-595-LPS, 2016 U.S. Dist. LEXIS 153978 (D. Del. Nov. 7, 2016) ...............9, 17

*Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp.*,
　C.A. No. 19-149-MN, 2019 U.S. Dist. LEXIS 104628 (D. Del. June 6, 2019) .....................18

*AgroFresh Inc. v. Essentiv LLC*,
　C.A. No. 16-662-MN, 2019 U.S. Dist. LEXIS 91035 (D. Del. May 31, 2019)
　(Noreika, J.) ...............................................................................................................7, 12, 15

*Alexion Pharms., Inc. v. Samsung Bioepis Co. Ltd.*,
　C.A. No. 24-5-GBW, 2024 U.S. Dist. LEXIS 86357 (D. Del. May 6, 2024) ........................11

*Amsted Rail Co. v. Hum Indus. Tech., Inc.*,
　No. 4:22-cv-00445-AGF, 2023 U.S. Dist. LEXIS 62325 (E.D. Mo. Apr. 10,
　2023) ...............................................................................................................................13, 17

*Bio-Rad Labs. Inc. v. 10X Genomics, Inc.*,
　C.A. No. 18-1679-RGA, 2020 U.S. Dist. LEXIS 96411 (D. Del. June 2, 2020) ..........9, 12, 14

*Choon's Design LLC v. Wecool Toys Inc.*,
　No. 22-6424 (ES), 2024 U.S. Dist. LEXIS 22158 (D.N.J. Feb. 8, 2024)................................17

*Consumeron, LLC v. Maplebear Inc.*,
　C.A. No. 21-1147-GBW-MPT, 2023 U.S. Dist. LEXIS 83601 (D. Del. May
　12, 2023) ................................................................................................................................9

*Dental Monitoring v. Get-Grin Inc.*,
　C.A. No. 22-647-WCB, 2024 U.S. Dist. LEXIS 67627 (D. Del. Apr. 9, 2024)..............8, 9, 18

*DiversiTech Corp. v. RectorSeal, LLC*,
　No. 20-11896-NMG, 2021 U.S. Dist. LEXIS 131270 (D. Mass. July 14, 2021)...................18

*Ethicon LLC v. Intiutive Surgical, Inc.*,
　C.A. No. 17-871-LPS, 2019 U.S. Dist. LEXIS 45452 (D. Del. Mar. 20, 2019) .................. 7-8

*Gioello Enters. Ltd. v. Mattel, Inc.*,
　C.A. No. 99-375-GMS, 2001 U.S. Dist. LEXIS 26158 (D. Del. Jan. 29, 2001).....................12

*Gratuity Sols., LLC v. Toast, Inc.*,
　No. 1:22-cv-11539-JEK, 2024 U.S. Dist. LEXIS 74550 (D. Mass. Apr. 24,
　2024) ....................................................................................................................... 9-10, 12, 13

*IBM v. Zynga Inc.*,
    C.A. No. 22-590-GBW, 2023 U.S. Dist. LEXIS 213050 (D. Del. Nov. 30,
    2023) ................................................................................................................10

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    C,A, No. 18-452-WCB, 2019 U.S. Dist. LEXIS 141545 (D. Del. Aug. 21,
    2019) ........................................................................................................9, 11, 14

*Kannuu Pty Ltd. v. Samsung Elecs. Co.*,
    No. 19-4297-ER, 2021 U.S. Dist. LEXIS 10377 (S.D.N.Y. Jan. 19, 2021) ...........................12

*Merck Sharp & Dohme LLC v. Johns Hopkins Univ.*,
    No. 22-3059-JRR, 2024 U.S. Dist. LEXIS 115176 (D. Md. June 29, 2024)...........................13

*Monterey Resch LLC v. Nanya Tech. Corp.*,
    C.A. No. 19-2090-NIQA-LAS, 2021 U.S. Dist. LEXIS 250963 (D. Del. June
    25, 2021) ...........................................................................................................15

*NFC Tech. LLC v. HTC Am., Inc.*,
    No. 2:13-CV-1058-WCB, 2015 U.S. Dist. LEXIS 29573 (E.D. Tex. Mar. 11,
    2015) ..................................................................................................................9

*N. Atl. Imps. LLC v. Loco-Crazy Good Cookers,Inc.*,
    C.A. No. 23-999-GBW-SRF, 2024 U.S. Dist. LEXIS 210548 (D. Del. Nov.
    19, 2024) ...........................................................................................................13

*Nuance Commc'ns, Inc. v. MModal LLC*,
    C.A. No. 17-1484-MN (D. Del. Apr. 8, 2019), D.I. 226 ......................................................11

*PopSockets LLC v. Quest USA Corp.*,
    No. 17-CV-3653 (FB)(CLP), 2018 U.S. Dist. LEXIS 168219 (E.D.N.Y. Sept.
    28, 2018) ...........................................................................................................14

*Reald Spark, LLC v. Microsoft Corp.*,
    No. 2:22-cv-00942-TL, 2024 U.S. Dist. LEXIS 16384 (W.D. Wash. Jan. 30,
    2024) ................................................................................................................13

*Synthego Corp. v. Agilent Techs., Inc.*,
    No. 5:21-cv-07801-EJD, 2022 U.S. Dist. LEXIS 122933 (N.D. Cal. July 12,
    2022) ............................................................................................................ 17-18

*TTI Consumer Power Tools, Inc. v. Lowe's Home Ctrs. LLC*,
    C.A. No. 22-673-CFC, 2022 U.S. Dist. LEXIS 202085 (D. Del. Nov. 7, 2022)....................15

*WSOU Invs., LLC v. Netgear, Inc.*,
    C.A. No. 21-1117-MN-CJB, 2022 U.S. Dist. LEXIS 215391 (D. Del. Nov. 30,
    2022) ................................................................................................................15

**Statutes**

35 U.S.C. § 316(a)(11)....................................................................................................6

## INTRODUCTION

Geneoscopy, Inc. ("Geneoscopy") respectfully moves to stay this case pending the U.S. Patent Trial and Appeal Board's ("PTAB's") review of the validity of the patent claims on which Exact Sciences Corporation ("Exact") bases its declaratory judgment action against Geneoscopy.

On July 26, 2024, the PTAB instituted *inter partes* review ("IPR") of all twenty claims of asserted U.S. Patent No. 11,634,781 ("the '781 patent"). The primary thrust of Exact's opposition to Geneoscopy's prior motion to stay was that, at the time of filing, only one of Exact's two asserted patents was subject to IPR. Exact repeatedly asserted, in its opposition papers, that the PTAB "likely will deny institution" of IPR with respect to U.S. Patent No. 11,970,746 ("the '746 patent"), and that Geneoscopy's argument explaining, to the contrary, that institution was highly likely was "pure speculation." D.I. 101 at 4, 7. Faced with uncertainty as to the forthcoming institution decision, the Court denied Geneoscopy's motion for stay but invited Geneoscopy to refile it if the PTAB instituted IPR on the '746 patent.

Last Friday, on February 14, 2025, the PTAB instituted IPR of all asserted claims of the '746 patent, eliminating Exact's primary argument against a stay. The PTAB expressly found that Geneoscopy "has shown sufficiently" that "the combination of the [cited references] teaches each limitation" of the claims and that "a POSA would have had a reason to combine the [references] with a reasonable expectation of success." D.I. 212-1 at 20-21. The PTAB has now instituted IPR of every patent claim asserted by Exact in this case, casting substantial doubt over their viability. In both cases, the PTAB instituted IPR based on all grounds raised by Geneoscopy, finding a reasonable likelihood that the challenged claims would have been unpatentable as obvious over the cited references.

A stay is warranted with an instituted IPR proceeding pending with respect to every asserted claim. As explained below, granting a stay pending IPR will almost certainly result in

simplification of some, if not all, of the validity issues that otherwise would need to be tried, and it will prevent costly duplication of efforts. For these reasons, granting a stay will promote judicial economy, shielding the Court from the need to expend resources adjudicating patent claims likely to be found invalid. It will also allow the parties to avoid the burden and expense of full-blown discovery and motion practice that may be entirely unnecessary. Given that the case is in its early stages, and the most burdensome future proceedings are many months away, granting Geneoscopy's motion will advance the interests of efficient case management and substantially reduce the costs of litigation.

## BACKGROUND

### A.    Exact's Patent Claims and Geneoscopy's Response

On November 17, 2023, Exact sued Geneoscopy asserting that Geneoscopy's ColoSense™ product would "imminently infringe" the '781 patent. D.I. 1.[1] The '781 patent is directed to the separation of a fecal sample into two portions to permit two standard diagnostic tests for detection of colorectal cancer ("CRC")—one to detect blood proteins and the other to detect DNA biomarkers—to be performed on the sample.

Geneoscopy's accused ColoSense test is the first noninvasive CRC screening test to provide a dynamic view of disease activity by testing for the expression of real-time *RNA* biomarkers in patient samples, based on Geneoscopy's patented RNA technology platform. Geneoscopy's ColoSense test earned FDA Breakthrough Device Designation on January 13, 2020, and the FDA approved Geneoscopy's premarket approval application for ColoSense on

---

[1] The asserted patents do not arise from any innovation at Exact. On the contrary, both patents claim priority to a provisional application filed in 2009 by Belgian company OncoMethylome Sciences. *Id.* ¶ 49. The sole inventor, Joost Louwagie, was an OncoMethylome employee. Not until eight years after OncoMethylome filed its priority application, and three years after Exact had commercially launched its Cologuard® product, did Exact purchase the patent family from OncoMethylome. *Id.* ¶ 48.

May 3, 2024. Since then, Geneoscopy has focused on obtaining CMS reimbursement for ColoSense, and it has yet to perform a single test for a commercial customer. D.I. 127 ¶¶ 18, 37.

Exact's '746 patent issued on April 30, 2024, and two weeks later Exact asserted a declaratory judgment claim of infringement of this second patent in a separate action against Geneoscopy. D.I. 1 (C.A. No. 24-583-MN). On June 17, 2024, the parties stipulated that consolidating the two actions "would best serve judicial economy," and the Court thereupon consolidated the cases for all purposes. D.I. 35, 36.

On June 28, 2024, Geneoscopy filed answers and counterclaims to Exact's patent claims. D.I. 52, 53. Geneoscopy's counterclaims assert, *inter alia*, breach of contract and trade secret misappropriation. As detailed in those pleadings, Exact obtained access to Geneoscopy's proprietary technology by conducting "due diligence," on the excuse of a purported interest in acquiring Geneoscopy. Exact then breached confidentiality agreements covering Geneoscopy's technology, including Exact's secretly filing patent applications crafted with the intent of capturing Geneoscopy's RNA-based test (then under development) by improperly broadening the claims of the OncoMethylome patents.

Eight months after suing Geneoscopy for patent infringement, on July 16, 2024, Exact moved for a preliminary injunction—ultimately asserting claim 1 of the '781 patent and claim 3 of the '746 patent. It rushed to file its motion just days before the PTAB's '781 IPR institution decision was due. After receiving the PTAB's decision later that month finding that the '781 claims were likely unpatentable as obvious, Exact rehashed, as support for its PI motion, the same arguments the PTAB had expressly considered and rejected in its institution decision, finding that they misstated both the prior art and applicable legal standards. On January 31, 2025, this Court heard argument on Exact's PI motion and took the motion under advisement.

Notwithstanding the belated motion for a preliminary injunction, the case is in its early stages—indeed, neither party has yet answered the other's claims and counterclaims that were the subject of motions to dismiss. The court entered a schedule only last week, setting a trial date of November 16, 2026, nearly two years away. D.I. 208. The most burdensome stages of the case, including up to 240 hours of fact depositions, plus *Markman* briefing and hearing, expert reports, expert depositions, and dispositive motions, are many months away.

### B.    The PTAB Institutes *Inter Partes* Review of All Asserted Claims

Less than two months after Exact commenced suit, on January 11, 2024, Geneoscopy filed an IPR petition in the PTAB, supported by a 179-page expert declaration, challenging the validity of all claims of the '781 patent as obvious over the prior art. Ex. 1.[2] Geneoscopy based its petition on six separate grounds, two of which challenged claim 1, the '781 patent's sole independent claim. *Id.* at 12. As Geneoscopy's petition explained, the sample processing methods claimed by the '781 patent amount to no more than the routine use of conventional methods to prepare a fecal sample to perform two well-established complementary diagnostic assays. On July 26, 2024, the PTAB instituted IPR of all claims of the '781 patent on all grounds raised by Geneoscopy. D.I. 84-1.

In August, just over two weeks after the PTAB instituted review of the '781 patent, Geneoscopy moved to stay this action pending IPR of the asserted patent claims. D.I. 90. As explained in Geneoscopy's opening brief, Geneoscopy was then in the process of preparing and filing a second IPR petition challenging the validity of the '746 patent. D.I. 91 at 5. Geneoscopy's IPR petition for the '746 patent asserted seven separate invalidity grounds and requested cancellation of claims 1-4 and 12-19 of the '746 patent. Ex. 2 at 12.

---

[2] Exhibits in this opening brief are the exhibits attached to the accompanying Declaration of Sarah S. Burg ("Burg Dec.").

Exact's opposition to Geneoscopy's August 2024 motion to stay argued that "the PTAB's institution decision on the second petition will not happen for another six months" and that the PTAB "likely will deny institution" of the '746 IPR. D.I. 101 at 1, 4. On that basis, Exact urged the Court not to consider staying the case "***until there is an institution decision on the second IPR***." *Id.* at 9 (emphasis added). On November 1, 2024, this Court denied the motion to stay, while expressly granting Geneoscopy leave to refile if the PTAB institutes IPR of the '746 patent.

In its preliminary response to the '746 IPR petition, Exact disclaimed claims 1 and 2 of the '746 patent, implicitly recognizing their invalidity over the prior art despite having asserted them against Geneoscopy in this litigation last May. D.I. 212-1 at 2. Exact's response urged the PTAB to discretionarily deny review. It also attacked Geneoscopy's prior art references on the same grounds the PTAB expressly rejected when it instituted the '781 IPR. In addition—in contrast to Exact's preliminary response to the '781 IPR—Exact's response included 12 pages of argument asserting that secondary considerations overcame the obviousness of the claimed methods. Ex. 3 at 50-61. Exact's submissions included an 85-page expert declaration, a 19-page witness declaration, and 40 exhibits. Exact's secondary considerations arguments were substantially identical to the arguments Exact made to this Court in support of its PI motion.

On February 14, 2025, the PTAB rejected all of Exact's arguments and instituted IPR of all challenged claims of the '746 patent—including each claim asserted in this litigation. *Id.*[3] The

---

[3] The PTAB's '746 institution decision was unsurprising. The '746 patent issued from a continuation to the application that earlier issued as the '781 patent. As Geneoscopy's '746 petition explains, the '746 patent claims are *broader* than the '781 claims and thus even more susceptible to the prior art. Ex. 2 at 70. Indeed, during the '746 patent's prosecution, the examiner compared the proposed claims of the '746 patent to the claims of the '781 patent and found that, although not identical, "they are not patentably distinct." *Id.*

PTAB found that, for each separate ground raised by Geneoscopy, it has established "a reasonable likelihood of prevailing on its assertion that the challenged claims would have been unpatentable as obvious over the cited references." D.I. 212-1 at 9, 22, 27, 31. The PTAB also considered Exact's contention that the obviousness of the claims should be overcome by secondary considerations. The PTAB found, even ***assuming*** that a nexus exists between the Cologuard product and the '746 claims, that Exact had failed to establish that "objective indicia of nonobviousness outweighs Petitioner's obviousness challenge." *Id.* at 31.

The PTAB's statutory deadline for issuing its final written decision on the '781 patent is July 26, 2025. *See* 35 U.S.C. § 316(a)(11). The PTAB's statutory deadline for issuing its final written decision on the '746 patent is February 14, 2026. *Id.*

C.     **Exact's Ancillary False Advertising Claims**

In its original complaint, Exact asserted only claims of patent infringement. Its First Amended Complaint ("FAC") in January 2024 added three counts under the Lanham Act and related state law.[4] D.I. 15. Exact's false advertising claims attack Geneoscopy's public statements reporting the clinical performance of its ColoSense test on the basis of clinical data published in a peer-reviewed journal, the *Journal of the American Medical Association.* D.I. 32 at 56-94. The FDA later determined, based on the same clinical data, that Geneoscopy's ColoSense test is safe and effective for the approved indications. Exact's amended complaint adds unfounded allegations that Geneoscopy has falsely claimed "superiority" of ColoSense over Exact's Cologuard and Cologuard Plus products in the absence of head-to-head testing. *Id.*

When it opposed Geneoscopy's prior stay motion, Exact asserted that its non-patent

---

[4] Exact filed a Second Amended Complaint on June 3, 2024. D.I. 32. The Second Amended Complaint's false advertising claims update some of the allegations that appeared in the First Amended Complaint, but otherwise, in structure and substance, the claims are the same claims previously pleaded in the First Amended Complaint.

claims would not be resolved by the '781 IPR. D.I. 101 at 13. But Exact did not deny that its false advertising claims are closely linked to, and significantly overlap with, Exact's patent claims. Indeed, the underlying factual disputes are inextricably intertwined, as demonstrated by Exact's PI papers asserting the same allegations about the ColoSense clinical data that underlie Exact's false advertising claims. These include key components of Exact's allegations in support of its patent claims with respect to irreparable harm, balance of harms, and public interest:

- "[b]y pitting ColoSense's performance against Cologuard's, ***despite having no head-to-head testing or other supporting data***, Geneoscopy will erode the Cologuard brand,"
- "customers will improperly view ColoSense's performance as comparable to Cologuard ***despite ColoSense being subject to far less robust validation***,"
- the alleged harm is caused by "Geneoscopy's promotion of ColoSense by comparing it to Cologuard … and its marketing and sales in direct competition with Cologuard," and
- "because Exact Sciences outstrips Geneoscopy in terms of the number of peer-reviewed and validated studies of Cologuard, Cologuard would be considered the safer alternative by the relevant medical community."

D.I. 63 at 17, 20 (emphasis added); D.I. 164 at 9. Most recently, in its initial disclosures served earlier this week, Exact identified Geneoscopy's CEO and its Chief Medical and Science Officer as Geneoscopy witnesses likely to have information that Exact may use to support its claims or defenses. Ex. 4. For each witness, Exact stated that the subject matter of discovery is ***both*** Geneoscopy's alleged "infringement of the Patents-in-Suit" and Geneoscopy's alleged "false and misleading advertising, deceptive trade practices, and unfair competition as it relates to ColoSense, Cologuard, and Cologuard Plus." *Id.* at 5.

## LEGAL STANDARD

"Whether or not to stay litigation is a matter left to the Court's discretion." *AgroFresh Inc. v. Essentiv LLC*, C.A. No. 16-662-MN, 2019 U.S. Dist. LEXIS 91035, at *4 (D. Del. May 31, 2019) (Noreika, J.) (*quoting Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS,

2019 U.S. Dist. LEXIS 45452, at *3 (D. Del. Mar. 20, 2019)). "Courts typically review three factors in determining whether a stay is appropriate: (1) whether a stay will simplify the issues for trial, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Id.*

## ARGUMENT

Each of the three factors courts consider in evaluating a stay motion warrants a stay. First, a stay of this litigation will avoid needlessly wasting the Court's and the parties' resources on patent claims likely to be found invalid. The IPR proceedings will address the patentability of all asserted claims and significantly narrow the issues for trial irrespective of the outcome.

Second, this case is in its early stages. Beyond the limited discovery taken during the PI phase of the case, the parties only recently served written discovery requests, the close of fact discovery is over six months away, and the time-consuming process of *Markman* briefing will not begin until October 2025. The PTAB will reach its Final Written Decision in both IPRs long before this case reaches trial, scheduled for November 2026.

Third, a stay would not cause undue prejudice to Exact or give a tactical advantage to Geneoscopy. Geneoscopy's IPR petitions and stay request were timely, and delays inherent in the statutory IPR review process do not constitute undue prejudice. Any harm caused to Exact during the pendency of the stay will not cause undue prejudice where any such harm may be readily calculated and remedied monetarily.

1.    Factor (1): A Stay Will Simplify Issues For Trial

"[W]hether the stay is likely to simplify the issues at trial" is the "most important factor" in determining whether a stay should be granted. *Dental Monitoring v. Get-Grin Inc.*, C. A. No. 22-647-WCB, 2024 U.S. Dist. LEXIS 67627, at *13 (D. Del. Apr. 9, 2024). That factor stands out here, where the PTAB has instituted IPR of every asserted claim of the patents-in-suit. *See*

*Consumeron, LLC v. Maplebear Inc.*, C.A. No. 21-1147-GBW-MPT, 2023 U.S. Dist. LEXIS 83601, at *3-4 (D. Del. May 12, 2023) ("The PTAB has granted IPR proceedings with respect to every asserted claim in this case, and the results of the proceedings have a high likelihood of simplifying the issues for this Court"); *Bio-Rad Labs. Inc. v. 10X Genomics, Inc.*, C.A. No. 18-1679-RGA, 2020 U.S. Dist. LEXIS 96411, at *1-2 (D. Del. June 2, 2020) (staying the case where "the [PTAB] instituted [IPR] … proceedings on all asserted claims of the patents-in-suit."); *454 Life Scis. Corp. v. Ion Torrent Sys.*, C.A. No. 15-595-LPS, 2016 U.S. Dist. LEXIS 153978, at *7 (D. Del. Nov. 7, 2016) (granting a stay where the "PTAB ha[d] granted review with respect to every asserted claim"); *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 U.S. Dist. LEXIS 29573, at *18-19 (E.D. Tex. Mar. 11, 2015) ("courts [across numerous districts] have been nearly uniform in granting motions to stay proceedings in the trial court after the PTAB has instituted [IPR] proceedings") (collecting cases).

As explained by Judge Bryson sitting by designation in this district, "[g]iving the agency the authority to consider the validity of patents in the [IPR] process was designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation." *Dental Monitoring*, 2024 U.S. Dist. LEXIS 67627, at *13 (quoting *NFC Tech.*, 2015 U.S. Dist. LEXIS 29573, at *12). Here, there can be no doubt that the parties and the Court would gain substantial efficiencies from a stay pending IPR.

As Judge Bryson recognized, courts apply a "liberal policy" in favor of stays pending instituted IPR proceedings. *See IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB, 2019 U.S. Dist. LEXIS 141545, at *11 (D. Del. Aug. 21, 2019) ("the liberal policy in favor of stays … applies to stays pending instituted IPR proceedings"); *see also Gratuity Sols.,*

*LLC v. Toast, Inc.*, No. 1:22-cv-11539-JEK, 2024 U.S. Dist. LEXIS 74550, at *11 (D. Mass.

Apr. 24, 2024) ("the maximum potential for simplification of issues exists … because the PTAB

has instituted an IPR" for all asserted claims). There is no reason why this policy should not

apply here. Indeed, "this Court routinely stays cases after institution and keeps them stayed until

after a Federal Circuit appeal has concluded." *IBM v. Zynga Inc.*, C.A. No. 22-590-GBW, 2023

U.S. Dist. LEXIS 213050, at *7 (D. Del. Nov. 30, 2023). Courts stay cases pending the outcome

of IPRs to avoid needless duplication of the parties' and the Court's resources, and to provide the

Court the benefit of the PTAB's analysis.

The PTAB has given a clear indication that it is likely to invalidate all challenged claims

of the '781 and '746 patents. In assessing the '781 patent, the PTAB considered and rejected

Exact's argument in favor of validity, agreeing with Geneoscopy that a first "combination of the

cited references teaches each limitation of the claims and that a POSA would have had a reason

to combine the references according to the claimed invention with a reasonable expectation of

success." D.I. 84-1 at 19-20. The PTAB likewise found that "[Geneoscopy] has shown a

reasonable likelihood of prevailing on its assertion that the challenged claims would have been

unpatentable over the asserted combinations of [a second, independent combination of cited

references]." *Id.* at 23. In considering the '746 patent, the Board agreed with Geneoscopy that the

same two independent combinations of references "teach[] each limitation of [the claim] and a

POSA would have had a reason to combine the teachings with a reasonable expectation of

success to reach the claimed invention." D.I. 212-1 at 20-21, 26. The PTAB also further found,

based on a third, independent combination of cited references, a reasonable likelihood that the

challenged claims of the '746 patent would have been unpatentable as obvious. *Id.* at 27. The

PTAB thus found, based on multiple separate and independent grounds, a reasonable likelihood

that all challenged claims of the '781 and '746 patents asserted by Exact in this case are unpatentable.

The PTAB's decision instituting IPR on the '746 patent has added significance. First, when Exact submitted its preliminary response in the '746 IPR, it had the benefit of having first seen the PTAB's analysis of the same prior art in its '781 institution decision, and thus Exact could respond directly to the PTAB's reasoning. Despite that, the PTAB remained wholly unpersuaded by Exact's arguments. Second, whereas in the '781 IPR Exact held back its secondary considerations arguments, in the '746 IPR it submitted the full panoply of its evidence (the same evidence it submitted to this Court in support of a PI). Yet the PTAB found that Exact's evidence did not outweigh Geneoscopy's obviousness challenge, even assuming a presumption of nexus between the patent claims and Cologuard. D.I. 212-1 at 30-31.

Statistically, the PTAB is highly likely to reaffirm its findings in its final decisions: "[i]n FY 2023, over 77% of instituted claims were cancelled in a final written decision." *Alexion Pharms., Inc. v. Samsung Bioepis Co.*, C.A. No. 24-5-GBW, 2024 U.S. Dist. LEXIS 86357, at *5 (D. Del. May 6, 2024); *see IOENGINE*, 2019 U.S. Dist. LEXIS 141545 at *7-8 ("A stay is particularly justified when [like here] the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues."). "[E]ven if just one [claim] does not survive [IPR], the case will be somewhat simplified and that weighs in favor of a stay." *Nuance Commc'ns., Inc. v. MModal, LLC*, C.A. No. 17-1484-MN (D. Del. Apr. 8, 2019) (Noreika, J.), D.I. 226 (Ex. 5) at 28.

The pending PTAB proceedings will narrow the issues for trial even in the unlikely event the PTAB ultimately upholds all twenty-three asserted claims of the '781 and '746 patents. Under the patent statute, the doctrine of estoppel would limit Geneoscopy's invalidity arguments

to those that could not have been raised in the IPR, simplifying the case by removing most prior art defenses. *See id.* at 27. And the outcome of one or both IPRs may encourage the parties to settle without further involvement of the Court, reducing time and expense both for the parties and the Court. *See Gioello Enters. Ltd. v. Mattel, Inc.*, C.A. No. 99-375-GMS, 2001 U.S. Dist. LEXIS 26158, at *3 (D. Del. Jan. 29, 2001).

In sum, regardless of the outcome of the PTAB's final written decisions, they will greatly simplify and narrow the issues for trial in this case. *See Gratuity Sols*, 2024 U.S. Dist. LEXIS 74550 at *11. "[P]ending IPRs have the potential significantly to simplify the issues for trial including by invalidating all asserted claims of the two patents, which would make a trial unnecessary." *Bio-Rad Labs.*, 2020 U.S. Dist. LEXIS 96411, at *3. Moreover, staying the case will avoid duplicating efforts in two venues: "it would be potentially wasteful to litigate the [asserted patents] while the [PTAB] also is addressing [them]." *AgroFresh*, 2019 U.S. Dist. LEXIS 91035 at *5.

Moreover, a stay of the entire case—including Exact's false advertising claims—is warranted. Exact's patent claims are the focus and driving force of this litigation. Exact did not even assert false advertising claims in its initial complaint, nor did it assert them in seeking a PI; at best, they are ancillary to the main dispute. Because the "patent claims are the main thrust of th[e] litigation," any surviving non-patent claims should be stayed alongside Exact's patent claims. *Kannuu Pty Ltd. v. Samsung Elecs. Co.*, No. 19-4297-ER, 2021 U.S. Dist. LEXIS 10377, at *26 (S.D.N.Y. Jan. 19, 2021).

As summarized above, Exact's false advertising allegations are central to its patent claims. Exact's PI papers asserting patent infringement focus as much or more on Exact's grievances about Geneoscopy's reporting of its clinical data as on the validity of the two asserted

patents. The common factual disputes underpinning Exact's patent claims and non-patent claims further support staying the entire case. *Gratuity Sols.*, 2024 U.S. Dist. LEXIS 74550 at *12 ("Courts routinely grant stays when, as here, faced with such factually overlapping patent and non-patent claims"); *Amsted Rail Co. v. Hum Indus. Tech., Inc.*, No. 4:22-cv-00445-AGF, 2023 U.S. Dist. LEXIS 62325, at *10 (E.D. Mo. Apr. 10, 2023) ("Faced with … factually overlapping patent and non-patent claims, federal courts have frequently concluded that considerations of judicial efficiency and the orderly course of justice favor a complete stay"); *Reald Spark, LLC v. Microsoft Corp.*, No. 2:22-cv-00942-TL, 2024 U.S. Dist. LEXIS 16384, at *4 (W.D. Wash. Jan. 30, 2024) (staying the whole case after IPR institution, in part because the non-patent claims (for breach of contract and trade secret misappropriation) and patent claims "involve some (though not total) overlap of facts and witnesses. . ."); *Merck Sharp & Dohme LLC v. Johns Hopkins Univ.*, No. 22-3059-JRR, 2024 U.S. Dist. LEXIS 115176, at *7 (D. Md. June 29, 2024) (in a case involving patent and breach of contract claims, finding "material inefficiency weighs in favor of keeping the parties' claims and counterclaims together as a single litigation unit—from the prospect of judicial resources, attorneys' fees and expenses, witness burden, and jury selection, time and attention").[5]

    Exact's patent and non-patent claims will involve ***identical discovery***, including overlapping written discovery, depositions, and expert testimony; there is no justification for the

---

[5] These cases contrast with *N. Atl. Imps. LLC v. Loco-Crazy Good Cookers, Inc.*, where the defendant failed sufficiently to explain how allegations of false advertising that its technology was "patented" would overlap with, or factor in at all, to the patent infringement case. C.A. No. 23-999-GBW-SRF, 2024 U.S. Dist. LEXIS 210548, at *2, 5-6 (D. Del. Nov. 19, 2024). In denying the stay, the magistrate judge also considered that (i) not all asserted claims were subject to IPR; (ii) defendant waited more than six months to file its IPR petition; (iii) *Markman* briefing was complete, such that the case was "no longer in its earliest stages;" and (iv) since 2022 defendant had been selling the accused products in direct competition with plaintiff. *Id.* at *3, 7-9.

duplicative discovery that would result from only partially stayed litigation. Similarly, a partial stay would raise the prospect of two separate trials before two different juries on identical factual disputes over Geneoscopy's alleged false advertising about the performance of ColoSense, should Exact ultimately prevail on the validity of the asserted patents.

*PopSockets LLC v. Quest USA Corp.* is illustrative. This case involved a combination of patent claims, copyright infringement claims, Lanham Act claims, and assorted state law unfair competition and tort claims. No. 17-CV-3653 (FB) (CLP), 2018 U.S. Dist. LEXIS 168219, at *2 (E.D.N.Y. Sept. 28, 2018). The court granted a stay in light of pending IPR proceedings because, like here, the "IPR may result in a reduction (or, potentially, elimination) of the patent claims, which may additionally encourage settlement discussions," because "[t]hough the patent and non-patent claims are legally unrelated, the underlying factual disputes are intertwined," and because "judicial economy will be served by avoiding the bifurcation of this litigation." *Id.* at *5.

### 2.    Factor (2): This Litigation Is In Its Infancy

In this district, stays are favored when, like here, the "most burdensome stages of the case—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice— all lie in the future." *Bio-Rad Labs.*, 2020 U.S. Dist. LEXIS 96411, at *3-4 (quoting *IOENGINE*, 2019 U.S. Dist. LEXIS 141545, at *14).

The case on the merits is in its infancy. As in *Bio-Rad*, document production is not substantially complete (the parties only recently exchanged written discovery requests), no depositions have been scheduled (beyond the PI phase of the case), the *Markman* briefing is not due to commence until October 2025, expert discovery has not begun, and trial is more than 18 months away. *Bio-Rad*, 2020 U.S. Dist. LEXIS 96411, at *4. Staying this case at this early stage will advance judicial efficiency and prevent the Court and the parties from needlessly expending

resources on claims and defenses likely to be rendered moot. *E.g.*, *Monterey Rsch., LLC v. Nanya Tech. Corp.*, C.A. No. 19-2090-NIQA-LAS, 2021 U.S. Dist. LEXIS 250963, at *1-3 n.1 (D. Del. June 25, 2021). This factor weighs strongly in favor of a stay. *See TTI Consumer Power Tools, Inc. v. Lowe's Home Ctrs. LLC*, C.A. No. 22-673-CFC, 2022 U.S. Dist. LEXIS 202085, at *4-5 (D. Del. Nov. 7, 2022) ("Granting a stay at this early stage will advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their resources addressing invalid claims.").

      3.     <u>Factor (3): A Stay Would Not Cause Undue Prejudice Or Confer A Tactical Advantage</u>

Granting Geneoscopy's motion would not cause undue prejudice to Exact, nor would it confer a tactical advantage. Courts have explained that delays inherent in the PTAB's statutory review process do not constitute undue prejudice. *E.g.*, *WSOU Invs., LLC v. Netgear, Inc.*, C.A. No. 21-1117-MN-CJB, 2022 U.S. Dist. LEXIS 215391, at *4 (D. Del. Nov. 30, 2022) (granting motion to stay pending IPR proceedings and explaining that "the potential for … delay does not, on its own, amount to undue prejudice."); *Monterey Rsch.*, 2021 U.S. Dist. LEXIS 250963 at *1 n.1 ("The mere potential for delay does not in itself establish undue prejudice.") "In considering whether a stay will be prejudicial to [a plaintiff] or give [a defendant] a clear tactical advantage, the Court considers four factors: (1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *AgroFresh*, 2019 U.S. Dist. LEXIS 91035 at *6. Each factor favors a stay.

As a threshold matter, the respective size of the parties undermines any claim that a stay would cause Exact to suffer undue prejudice. Exact is a multinational corporation with annual revenues of $2.5 billion, including almost $2 billion from sales of Cologuard alone. Geneoscopy, by contrast, is a small, privately-held company that currently has no product revenue and is being

forced to spend enormous resources to defend litigation over patents that likely are invalid. Absent a stay, Geneoscopy will continue to incur substantial and burdensome legal costs each month, in addition to having already incurred the expense of opposing Exact's 2,500+ pages of briefing, declarations, and exhibits and nine depositions in connection with its PI motion. Through the AIA, Congress sought to provide an alternative, less costly forum to resolve patent validity. Allowing Exact to impose the debilitating cost of parallel patent litigation in federal court would defeat Congress' intent and inflict a huge financial burden on Geneoscopy's fledgling business.

The evidence does not support Exact's protestations of undue prejudice. Following the FDA's approval of ColoSense, investor analysts reported that its impact on Exact's business likely would be minimal, telling investors it would be "difficult to put a dent into" Exact's market position and not to "expect any impact to [Exact] in the [midterm]" given its "~11 year first mover advantage," pointing out that the "large unscreened market opp[ortunity] gives some room for entrants," and emphasizing that the "screening [market] requires significant resources in terms of physician education and marketing." Exs. 6-8. These views doubtless reflect the guidance that Exact gave to the analysts. In short, any potential harm to Exact would be minuscule compared to the harm Geneoscopy would suffer should it have to expend substantial additional resources defending costly, unnecessary and duplicative litigation.

***Timing of IPR petitions and of stay request.*** The timing of Geneoscopy's IPR petitions and the timing of the instant motion weigh in favor of a stay. Geneoscopy has been diligent in filing its two IPR petitions and seeking a stay. Geneoscopy petitioned for IPR of the '781 patent less than two months after Exact asserted the patent in this action. Geneoscopy petitioned for IPR of the '746 patent less than a month after the PTAB instituted the '781 IPR.

Geneoscopy brings this motion three business days after the PTAB instituted review of the '746 patent. Filing a motion to stay shortly after an institution decision "is generally the ideal time at which to file such a request." *454 Life Scis.*, 2016 U.S. Dist. LEXIS 153978, at *12 (granting stay where "[d]efendants filed their petitions less than six months into litigation and well within the one-year statutory window.").

**Status of the review proceedings.** This factor wholly rebuts any claim of undue prejudice. The PTAB has issued scheduling orders in both the '781 and '746 IPR proceedings, setting trial dates for May 1, 2025, and November 20, 2025, respectively. The '781 IPR proceedings will conclude just months from now. While the '746 IPR will not conclude until later, if the PTAB invalidates the '781 patent, it is almost impossible to imagine that the '746 patent will not meet the same fate. Indeed, at that point it is hard to see how Exact could responsibly continue to assert it. In short, the invalidity issues in the IPR proceedings are far more advanced than in this case and strongly support the grant of a stay.

**Relationship of the parties.** To date, Geneoscopy has yet to perform a single test for a commercial customer. To the extent that Geneoscopy could be considered currently to be engaged in direct competition with Exact, any impact on Exact is minimal, and the mere existence of competition alone cannot establish undue prejudice: "[a]lthough competition between the parties is a consideration when weighing this factor, it is not dispositive." *Amsted Rail*, 2023 U.S. Dist. LEXIS 62325 at *11; *see also Choon's Design LLC v. Wecool Toys Inc.*, No. 22-6424 (ES), 2024 U.S. Dist. LEXIS 22158, at *8 (D.N.J. Feb. 8, 2024) ("the fact that the parties are direct competitors in the marketplace does not necessarily translate to undue prejudice for [p]laintiff"). Moreover, the existence of "multiple other direct competitors in the marketplace attenuates this consideration." *Synthego Corp. v. Agilent Techs., Inc.*, No. 5:21-cv-07801-EJD,

2022 U.S. Dist. LEXIS 122933, at *9-12 (N.D. Cal. July 12, 2022) (granting motion to stay and terminating pending PI asserting lost business opportunities and price erosion); *Dental Monitoring*, 2024 U.S. Dist. LEXIS 67627 at *24 (when "there are a number of active firms in the relevant market," the fact that the parties are competitors carries less weight in the analysis). Exact admits that as of today, it is one of many entities competing in the market for noninvasive CRC screening tests.[6] As such, "[a]ny potential harm to [Exact] is mitigated … by the presence of other companies selling similar products in the same market." *DiversiTech Corp. v. RectorSeal, LLC*, No. 20-11896-NMG, 2021 U.S. Dist. LEXIS 131270, at *8-9 (D. Mass. July 14, 2021).

Moreover, even in the unlikely event that Exact ultimately prevails on an asserted patent, Exact's claim—that damages arising from Geneoscopy's sales could not readily be calculated—is implausible. In its PI papers, Exact presented no evidence to establish that it would be impractical for consumers to switch back to Cologuard if Exact prevails at trial. "This suggests that [any] sales of [ColoSense] at [Cologuard's] expense are ones that could be compensated with money damages." *Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp.,* C.A. No. 19-149-MN, 2019 U.S. Dist. LEXIS 104628, at *64 (D. Del. June 6, 2019).

Geneoscopy is a small, resource-constrained company. It has yet to perform a single test for a commercial customer. Exact should not be permitted to inflict enormous new litigation

---

[6] Exact concedes that Cologuard competes with many other non-invasive CRC screening tests. *E.g.,* Ex. 9 at 11-12 ("Our Cologuard test faces competition from … common screening tests, such as the fecal occult blood test ('FOBT') and the fecal immunochemical test ('FIT') … We are aware of a large number of companies including Guardant Health, Inc. ("Guardant"), Freenome Inc., GRAIL, Inc., and Natera Inc. that have developed, or are developing, liquid biopsy tests for the detection of cancer.") Guardant's Shield test is now FDA-approved and commercially available in the U.S. Ex. 10. In Exact's Q2 2024 earning call, its CEO Kevin Conroy touted the ***benefits*** of competition, stating "I happen to think that the competition is going to make us better. It's going to actually drive growth." Ex. 11 at 16.

costs on Geneoscopy, on top of the millions of dollars already spent in the PI phase, while the

PTAB is assessing patents it already has found are likely invalid.

## CONCLUSION

For all the above reasons, the Court should stay this case in its entirety pending *inter partes* review of the asserted patent claims.

<table>
<tr><td></td><td>ASHBY & GEDDES</td></tr>
<tr><td></td><td>/s/ Andrew C. Mayo</td></tr>
<tr><td>Of Counsel:</td><td>Steven J. Balick (#2114)</td></tr>
<tr><td></td><td>Andrew C. Mayo (#5207)</td></tr>
<tr><td>Donald R. Ware</td><td>500 Delaware Avenue, 8th Floor</td></tr>
<tr><td>Sarah S. Burg</td><td>P.O. Box 1150</td></tr>
<tr><td>FOLEY HOAG LLP</td><td>Wilmington, DE 19899</td></tr>
<tr><td>155 Seaport Boulevard</td><td>(302) 654-1888</td></tr>
<tr><td>Boston, MA 02210</td><td>sbalick@ashbygeddes.com</td></tr>
<tr><td>(617) 832-1000</td><td>amayo@ashbygeddes.com</td></tr>
<tr><td>dware@foleyhoag.com</td><td></td></tr>
<tr><td>sburg@foleyhoag.com</td><td>*Attorneys for Defendant*</td></tr>
</table>

Dated: February 20, 2025